The next case for argument is 22-1317 Van Dyke v. Wake Forest University. In order to avoid a little bit of a dog's breakfast here, the panel would like each side to begin your presentation by addressing the subject matter jurisdiction question. With respect to this side, since you have three folks arguing, I'm hoping that the first person that stands up since you filed a joint response would be able to address it so that we don't have to address subject matter jurisdiction. Yes, Your Honor, that's me. Okay, very good. Thank you. Let's proceed. Mr. Edwards. Thank you, Your Honor. Chris Edwards on behalf of Dr. Mark Van Dyke. I'll begin with the subject matter jurisdiction question. This court has appellate jurisdiction under 28 U.S.C. 1295. Supreme Court in Christensen against Cold Operating Industries said that there are two tests for the district courts arising under jurisdiction. That jurisdiction is tied to this court's appellate jurisdiction. In MCV, this court concluded that the correction of inventorship claim satisfied both prongs of those tests. We think that's the entire inquiry that's needed. The suggestion seems to be like a well-pleaded complaint, that that's what the district court has. Given her findings with respect to the failure of notice, etc., does that come within the bucket of a well-pleaded complaint in the first instance? I believe it does for several reasons. First off, as we pointed out in our supplemental briefing, this court regularly reviews subject matter jurisdiction dismissals for lack of standing. And I don't know that there is a distinction here. I don't know that there's a meaningful distinction between those two different types of subject matter jurisdiction dismissals. Moreover, I question whether the notice requirement is jurisdictional. I don't believe that is the holding of MCV. MCV discusses the Iowa State University Research Foundation case and the D case from the Southern District of Ohio. It adopts their reasoning without really discussing it. But the point of those cases, as I read them, is to say 256 allows a prospective inventor to bring a claim. It's not a holding about whether notice is or is not required. And so from my perspective, that's different. It does define the claim, right? It does tell you what the claim looks like. That's correct, Your Honor. And you have to have a substantial question of federal patent law in that claim to make the claim. Correct, Your Honor. If you don't have that, then you don't have a claim. And I believe the substantial question of federal patent law is whether or not Dr. Van Dyck is an inventor of the patents that we've alleged in the complaint. It could be, but that claim, that issue doesn't seem to be in controversy right now. It was not appealed. Correct, Your Honor. It was not appealed. How can it be properly before us? It hasn't even been appealed. Your Honor, as the court's aware, appeals are based on judgments, not opinions or orders. And this court in Abbott Labs against Brennan said that if you're going to appeal, that the path of appeal is determined at the time the complaint is filed. So when we filed the complaint, we contend we had a well-pleaded patent claim. We had a well-pleaded complaint. The court dismissed that claim, right? You amended your complaint to include a 256-type allegation. That's correct. The district court dismissed that claim for lack of subject matter jurisdiction. You did not appeal it. I view Section 256 as that we have no authority to hear your case. Without the appeal, Your Honor, or without the notice issue? Right now.  It's not before the court. Now, it could be. Now, I'm not sure I believe this all the way, but it could be that we could hear the case anyway. We could extend our jurisdiction to decide the issue or things of that nature. But I haven't seen from your side anything that convinces me that we have subject matter jurisdiction here. Your Honor, I think that Abbott Labs is directly on point when it says that this court has jurisdiction irrespective of what the issues appealed are, irrespective of what's in the district court's order. It starts at the beginning of the case. So under the other side's view, when the notice of appeal is filed here, nobody would know. You may not have decided what issue you want to appeal. I mean, I understand their point of view to draw the distinction. If you had appealed it, we'd have subject matter jurisdiction. But your failure to appeal, and except for the Schwarzkopf case, which seems pretty discreet in terms of its things, are there any cases that you're aware of? I mean, or on the other side, are there not cases in which we've taken up only issues that are outside of our jurisdiction because of early existence of a patent issue?  The pellet in that case abandoned all of the patent claims, all the claims that would have given this court subject matter jurisdiction, and the court said it doesn't matter, that it's still allowed to proceed with the state claims. So how do you get around Schwarzkopf? How unique is it? You have to say that's unique. As we said in our response brief on the jurisdictional issue, I think that that fits into a discreet subset of cases where a district court either dismisses a patent claim without prejudice before entering a final judgment, or the plaintiff amends the complaint under Civil Rule 41 to take the patent claim out of the case. Here, the district court's decision, actually, page 19 of the appendix, the district court says it's dismissing all of our claims with prejudice,  Unlike Schwarzkopf, where there's this affirmative action that is essentially acquiescence, that says, well, I don't care about the patent claim. Here, we argued against its dismissal, that's at 2020 and 2021 of the appendix, and the district court didn't provide us leave to amend, didn't give us any additional time to fix that, and by throwing the entire case out at once, I think that is the dispositive fact, and that's what makes Schwarzkopf different. Just one more, on the well-pleaded complaint, what is the relationship between having a well-pleaded patent claim in a complaint versus having subject matter jurisdiction in the district court over that claim, versus stating a claim on which relief could be granted? That is, the district court shot your claim down under 12b1 and 12b6, I think, but yet you're still maintaining that it was a well-plead complaint. How could that be? Your Honor, 12b1 dismissals, I think, encompass more than just the well-pleaded complaint. There's also the issue of standing that would go into 12b1. I don't see a meaningful way in the law to distinguish between an appeal based on a standing issue versus an appeal based on the well-pleaded complaint rule. This is unlike the cases that my friends on the other side have cited, where there's this transient or insubstantial patent claim, because those claims, if you look down the rabbit hole, the published opinions on that are only about allegations of ownership, and there's no dispute. I think Kerenetics has even agreed, essentially, that Dr. Van Dyck would have stated a claim for the 095 patent, but for the failure to allege notice. I don't see that there is any meaningful distinction, that this court should hear both types of those appeals, even if we are not contesting the district court's patent decision, because I think, again, this court has already determined that the path of appeal is determined at the time the complaint is filed. If there are no further questions, I'll move to the substantive issues in the order in which we brief them. First, I'd like to talk about the unfair trade practices claim. The district court erred when it dismissed that claim. Its opinion essentially holds that Dr. Van Dyck failed to state a claim under North Carolina General Statute 75-1.1, because he didn't allege a tortious interference with contract claim to support that. That's directly contrary to law from the Supreme Court of North Carolina, which has construed this statute to apply to any oppressive, immoral, unscrupulous, unethical conduct. The time is short, obviously. Your allegations with respect to the employment agreement? Yes, Your Honor. When you look at the employment agreement, and your friend does raise this, besides the fact that it seems maximum return seems a little ambiguous, but there's a provision in that agreement that says that the other side, the university, and finally the university president, I believe, has the right to, is going to decide any dispute that arises between anything and everything dealing with the employment agreement. So why would there be any authority or jurisdiction in the court to adjudicate those claims if it says, and the president's decision is binding on all parties, in the case of a difference of opinion on the division of proceeds or other provisions of this policy, they have final say on that. So how is that reviewable under any of them? I think that the dispute we've raised here, the screen issue we've raised here falls outside of that language. This isn't a dispute about the division of proceeds. I don't think anybody is contesting that Dr. Van Dyke has a 46 and split. Or other provisions of this policy. I thought maybe you're right. It's not about division of proceeds because you never got any proceeds. But it is about provisions of this policy. Wasn't the claim predicated on this word maximum return and they failed to live up to their obligation to provide maximum return for Mr. Van Dyke, Dr. Van Dyke? I still don't think that that's a difference of opinion. As Wake Forest argues, there are issues in the policy about what does the university get to decide versus how does the university get to balance its competing interests. I think that's where the president or his appointee's discretion would come in. What's the claim here, that they didn't collect the money under the license agreement? The claim is that Wake Forest has not taken reasonable efforts or best efforts to enforce the maximum financial or to provide financial return of any kind for Dr. Van Dyke. Well, they have a difference of opinion with respect to the provision that you just referred to about taking maximum efforts to achieve maximum return or whatever. There's a difference of opinion on that. And under my read of the agreement, the president's decision is binding on all parties. Your Honor, I don't know that there is a difference of opinion on that because I've never seen anyone from the other side contest that there's been a breach. There's not been any... I thought that was it. What are you complaining? What's your complaint? Their entire argument is just that it is aspirational. What's your argument on the employment agreement? That Wake Forest has failed to take any steps to enforce the license agreement and to fulfill the maximum financial return language that it's required to do under the employment agreement? If there's no numbers attached to that, then why isn't it just aspirational? Your Honor, again, North Carolina law has, in the Bicycle Transit Authority case we cite in the blue brief, duty of good faith and fair dealing. It's the same as if you engage a realtor to sell your house. They have to use reasonable efforts to sell the house. And so the distinction is not between... It's not about picking numbers, but it's about, well, are you doing anything or are you doing something reasonable? And I think viewing the facts in the light most favorable to Dr. Van Dyke, we've alleged that Wake Forest hasn't done anything. And so it's not about whether Wake Forest has been reasonable, but instead about its failure to do anything to fulfill its contractual obligations. Did you push the district court to look away from the employment agreement and look to the license agreement when you were trying to articulate the basis for your employment agreement claim? Didn't you say, you know, this really isn't about the employment agreement, it's about the license agreement? Your Honor, I'm about to go into my rebuttal time. May I respond? Oh, yeah, of course. Judge Stark, I disagree with that characterization. We did not say that. Instead, we said that the provision in the employment agreement is to give effect, the license agreement gives effect to the provision in the employment agreement. So it's not about, it's not trying to recast this as a third-party beneficiary claim. Instead, what we've argued is that Dr. Van Dyke, he didn't have any expectation until the university implemented the program. This is how we determine whether or not, you know, these are the parameters under which he is to be provided maximum financial return. But the claim still sounds as violation of the maximum return language on 1245. Well, you said at 2077 of the appendix, Wake Forest argument tried to dismiss the claim is not only strained, it's misplaced in as much as it seems to rely solely on the language of the handbook, the handbook being incorporated into the employment agreement, right? Yes, Your Honor. And then you write, which is not at all the basis of plaintiff's claim. Doesn't that mean the handbook and the employment agreement are not at all the basis of your claim, it's just the license agreement? I disagree, Your Honor. If you read 2077 and 2078 in context, the argument that we are making is it's not just about a violation of the handbook, it's about what the handbook means in this world where there is a license agreement to provide Dr. Van Dyke with maximum return. I'm into my rebuttal time, so if the Court doesn't have any further questions.  Okay, so are you Mr. Long? I am, Your Honor. Okay, and you're going to carry, why don't you address the subject matter of jurisdiction? Firstly, you never raised it in the first instance. It was initiated by the panel, right? That's correct, Your Honor. We flagged the issue in the brief that the claim had been abandoned, but not the consequences of it. Okay. Now, you would agree the difference is if they had appealed it, clearly we would have jurisdiction, even if at the ultimate we were to agree with the district court that they failed on establishing a notice requirement that was necessary for 256. We would still have jurisdiction over that. So the only dividing line is that they didn't appeal it? Not exactly from my perspective, Your Honor. This is a unique combination of events. You have an inventorship without notice to other inventors, which I read MCV to suggest is subject matter jurisdiction, not cured with an opportunity below. By the way, below, this was their second amended complaint, so there have been many opportunities. And then third, it was abandoned and waived on both levels, below and here. So this unique combination of events, it may be a case of bad facts making bad law, but this unique combination of events where there never was a well-put complaint and it was abandoned with an opportunity to address below and above, creates a unique situation where there is at least substantial uncertainty from our perspective as a jurisdiction. I don't pretend to have as much clarity on that as I do on the merits. I think the merits are crystal clear in my view. But in terms of this issue, I think there's uncertainty. I will say that Abbott Labs is different in critical ways. There was no dispute there over whether the patent claim was well pled. It was, and that's a critical difference. And also, Abbott involved a host of patent issues, but they didn't remain on appeal after a trial. So there was a full trial. There's nothing transient at all about Abbott. There was a full trial, and after that, the patent issues weren't appealed, but they clearly existed, and there was no dispute as to their existence. So this case really is more like Schwarzkopf because... Was there an opportunity after trial to bring motions to court, stating motions for reconsideration and things of that nature? In our case, I suppose under the district court, one would have the opportunity to move to reconsider. That didn't occur. What occurred in the district court is the motion dismissed was granted, but this case started in state court in Virginia, found its way all the way to North Carolina federal court, second amended complaint in federal court after an initial complaint in state court. So they were on their third complaint and still failed to state a claim and still had this jurisdictional defect. So your view is that even if they don't appeal it, it's fine if there's still no patent issues in the appeal, that the distinction between this case is because of the nature of what they did or didn't do or what the complaints did or didn't do? I think the critical difference is that in Abbott, you had a well-plaid complaint. Here, you never had an issue that genuinely existed because the fundamental subject matter jurisdiction requirement of notice to the inventors was not alleged. To me, this is analogous to if someone were to assert patent infringement on a non-existent patent. Maybe that's putting the answer before the question. Would you acknowledge you can have a well-plaid complaint on a claim that ultimately you fail on? Those are not the same question. Correct, Your Honor. You can have a well-plaid complaint, I think, on a claim that ultimately the district court doesn't have jurisdiction over. Couldn't you? Or could you point me to something, particularly, I think we're in the Fourth Circuit, that says you can't, that if the district court finds it lacks subject matter jurisdiction, well then it per se was not a well-plaid claim. I wish I could, Your Honor. I think as we looked at it, there didn't seem to be clarity on this issue, and that's why we're somewhat agnostic about it. I think the merits were not, but on this issue it seems to be unclear. We haven't found a case directly on point. My point is that our cases are much closer, and this is a very unique combination of events where below and here, on a jurisdictional basis, the claim was non-existent, abandoned, and never well-plaid. I just want to make sure you did agree with Judge Prost, I think, that had the appellant tried to appeal the 256 claim to us, we would have jurisdiction, correct? I believe so, and I would, frankly, not have thought to challenge it. Okay, on the merits, since you're Wake Forest, you can deal with the employment agreement, right? I sure can, Your Honor. I think you heard the questions that were raised with your friend with regard to why anything he says about a dispute with regard to the employment agreement is not subject to unilateral control by the university, well, unilateral decision by the university at the end of the day. Yes, Your Honor, and there are really five reasons why the patent policy doesn't create a contract claim, but the question there, I think, was very informing, which is Wake has full discretion in the management of this program under the policy. And what did you understand his argument to be with respect to the employment agreement? What I understand his argument to be, in reality, as I hear it, is he's trying to indirectly use a policy to enforce a license agreement to which he's not a party or a third-party beneficiary. In other words, trying to take a policy that just talks about the development and implementation of a program, which, in fact, happened, and use that as a basis to assert claims under a license that he has no rights to enforce because he's not a party or a third-party beneficiary under it. So, as I understand it, he's simply claiming that this policy gives him the rights to control a program to trump a license agreement when, in fact, in our view, the policy says exactly the opposite. But he alleges you did absolutely nothing. Put aside maximize. He says he told you you all should be getting money from Karenetics, and I told you repeatedly, and you just did nothing to try to collect it, and that harmed him in connection with his employment agreement. Why is that not at least plausible? Well, it's not plausible, Your Honor, because we're on the pleadings, and in reality, we contest that assertion, but factually, on the pleadings, it's not plausible because we negotiated, entered into the license agreement, and then Exhibit 4, to his own complaint, shows the preliminary minor royalties that were paid and the proper division of those. So my point is that the system was set up. The license was negotiated. Initial royalties were paid and provided pursuant to Exhibit 4, Joint Appendix, page 321. How does that help you? I mean, I thought the problem with the license agreement is that you never enforced it under its terms, and his complaint is that he would have gotten a division of the proceeds, and you had an agreement. It's not like he's saying you should have licensed with them and didn't. You decided to enter into the agreement, and now you're not enforcing an agreement. You're letting the money sit there, and he would otherwise, I think we would agree, maybe be entitled to a division of the proceeds from that agreement. And the question, Your Honor, would be, what is the source of that duty? What Judge Eagles did is she analyzed it, and as you may recall, originally there was a breach of fiduciary duty claim as well. It started against Wake, and what the judge found was there was no contractual or legal basis under applicable North Carolina law for his claim. So even if the alleged breach were true, which it's not, there was no duty. And the reason there was no duty is because the only source that he identified, and the one that he conceded was his sole basis below before the district court, was the license agreement. And now with this new argument of the patent policy to bootstrap it, it doesn't go anywhere in our view for five very simple reasons. The first reason is that that's not what it says. It doesn't say maximizes personal financial return. It's implemented to provide maximum return for the university and the inventors collectively. And that program was established. It exists for all inventors, many of them, not just Dr. Van Dyke. And what he's doing is taking a single sentence in the patent policy section of a 115-page employee handbook that doesn't even include the word financial and trying to cobble together a claim that doesn't exist. So, you know, as you can tell from my other questions, I mean, I find this argument has some heft, largely because of this provision that says that it's the president that's going to adjudicate any differences with regard to differences of opinion with regard to the provision. But the district court didn't rely on that at all. Was that an argument you made before her? I know you made it in the briefs here. I made it in my briefs below. The reason the district court didn't address that was because below, I was anticipating his arguments, but below, that was not argued. As you recall in that brief, the direct quote is the patent policy is not at all the basis of plaintiff's claim, Appendix 2077. So the district court didn't have the opportunity to fully vet that, despite me raising the arguments in the brief. But Your Honor's question, I think, was directly right, which is Wake has the discretion, the president has the final say, but there's another consequence to that. This is an agreement. It's a binding dispute resolution process that he didn't engage in. So if he thought he had a claim under this, he would have had to pursue that process, and he didn't. So not only does Wake have the discretion, but also he didn't engage in the very process that would be a prerequisite for any lawsuit. Did the court address this? No, Your Honor, because below, this was characterized as solely a license agreement question. Okay. Your two other gentlemen were supposed to split time, but you've said... I'm sorry, Your Honor. No, don't apologize. Somebody had to step up on the subject matter jurisdiction. So I'd like to truncate, if we can, the other two periods of time to two and a half to three minutes for each other side, if you need it. So just to try to even it out. We have questions, obviously, that will be extended. Yes, Your Honor. Thank you, Your Honor. Good morning. So, Mr. Stafford, you represent Virtue Labs. Yes, Your Honor, that's correct. Good morning. Anything to add to what we've heard today? Yes, Your Honor. I would contend that the district court correctly held that Dr. Van Dyke failed to state a plausible claim of relief for trade secret misappropriation. That's the sole claim pled against my client, Virtue Labs. And so, if I may, I'd like the opportunity to briefly explain why that claim was not adequately pled. Was that claim affected by the settlement agreement? Yes, Your Honor, that's one of the reasons that the claim failed, but the principal reasons that the district court held that Dr. Van Dyke failed to state a plausible claim, there are three principal reasons. First, Dr. Van Dyke is not the owner of the alleged trade secret information at issue, so he lacks standing to assert the claim under the North Carolina Trade Secret Protection Act. Second principal reason is that Dr. Van Dyke failed to adequately identify the alleged trade secret information at issue or how it was misappropriated under the North Carolina Supreme Court decision in Cravey v. Manley. And third, Dr. Van Dyke failed to adequately identify the reasonable measures that he took to guard the secrecy of the alleged information. Because I have a limited amount of time, I'd like to focus on what I see as the principal reason that the claim fails, which is that Dr. Van Dyke failed to adequately identify his alleged trade secrets. The core problem with Dr. Van Dyke's pleading is that it stacked ambiguity on top of ambiguity, such that it was impossible for either the district court or the defendants to discern which of these processes was owned by Van Dyke as opposed to Wake Forest, because here again in the second... But the standard is pretty low, plausibility. You're correct. That's correct, Your Honor. The standard is low. But Dr. Van Dyke failed to meet it here. The Supreme Court in Cravey held that a plaintiff must identify his alleged trade secret information with specific facts sufficient to put the defendants on notice of what they allegedly misappropriated. And that didn't occur here, because as we sit here today, we don't know what Dr. Van Dyke owned versus what Wake Forest owns. We don't know which of these processes is even a secret. And we don't know which process was allegedly misappropriated by Virtue Labs. For all these reasons, we respectfully request that the court affirm the district court's decision. I see my time has expired. I'm happy to answer any questions. Thank you. May it please the court, I'm James Derrick on behalf of the Karenetics Appellees. Wake Forest and Virtue Labs' arguments also apply to the Karenetics Appellees, so I'd like to focus on the claim that's pled just against Karenetics for unfair and deceptive trade practices. This claim was properly dismissed by the district court because Dr. Van Dyke failed to allege the elements of tortious interference. And earlier today, Dr. Van Dyke began by criticizing the decision to focus on tortious interference. But he had two opportunities to brief this claim below. The court actually ordered supplemental briefing on this exact claim. And despite those opportunities, the only case law he presented was for tortious interference with the contract. So the district court analyzed the claim as he presented it, and this court should not expand it now to something broader than tortious interference. But at the end of the day, all he's actually alleged that Karenetics has done is not make payments owed under a license agreement. And that is a garden-variety breach-of-contract principle. And North Carolina courts are very clear that a breach of contract, even an intentional one, is not sufficient to state a claim for unfair and deceptive trade practices, unless a plaintiff can show substantial aggravating circumstances, which is a very high bar. It's generally things like forgery or destruction of documents or affirmative misrepresentations. That's not what's alleged here. Again, it's a breach of contract that's alleged by Karenetics that indirectly impacted Dr. Van Dyke, which is not a claim for unfair and deceptive trade practices under North Carolina law. And there's good reason for that. In fact, really the only allegations in the complaint, aside from breach of contract, relate to the theory about corporate reformation, essentially saying that these parties change names. But that's something that doesn't even fall within the purview of the Act here, which only applies to the day-to-day services or activities of a company. I see that I'm running out of time here. Happy to answer any questions, of course, but we'll rest on the briefing as the remaining issues, except to say that Judge Eagles here applied North Carolina law appropriately when she dismissed the claims, and this Court should affirm. Thank you. Thank you. We'll give you three minutes on the phone. Thank you, Your Honor. I have a lot to respond to. First off, I want to start by talking about the jurisdictional issue. We point to the cases on page six of our supplemental response brief, or supplemental brief, the Papp-Lodardo case and the Zenith case. This Court there considers claims that are essentially 256 claims, particularly in the Papp-Lodardo case, where the notice issue, you know, it's not pleaded under 256. It's pleaded as a deck judgment claim. And so the Court considers the state claim, says it has appellate jurisdiction. There's been representations made that we have the opportunity to cure our deficiency. That's simply not true. Judge Eagles never gave us leave to amend the pleading. That's a statement from our briefing saying that if we need to provide notice, we'll file a supplemental pleading. We were never asked to file a supplemental pleading. And even though this was the second amended complaint, it was the first complaint filed that included the 256 claim. Finally, this is not a transient claim. Again, the published authority on the transience issue that my friends on the other side have cited relates exclusively to patent ownership. This is not about that. Turning to the unfair trade practices claim, I think that Karen Eddix has misstated North Carolina law. It's not about expanding public policy. The cases they cite in the red brief on that issue are about expanding the common law. This is a statute, and the Supreme Court of North Carolina has tied it to Section 15 of the Federal Trade Commission Act. The Supreme Court of the United States has said that's supposed to be defined  Again, I'd note that the District Court did not address that argument. I also heard Mr. Derrick be suggesting that the corporate transactions piece was not interfecting commerce. That argument's been waived. It's not been raised or made anywhere. Again, on the unfair trade practices piece, we've not alleged a simple breach of contract by Karen Eddix. This is why tortious interference with contract is the closest analog. Nobody disputes Wake Forest has the obligation to pay Dr. Van Dyke. It's never been able to fulfill that obligation because Karen Eddix, as we've alleged, at pages 1149 through 54 of the appendix, Karen Eddix has withheld payment purposefully to harm Dr. Van Dyke. That is an unfair trade practice because it's an inequitable assertion of power, even if it doesn't cause a breach of contract by Wake Forest, because Wake Forest never has the chance. With respect to the employment agreement contract, I believe Wake Forest has waived the argument that you identified, Judge Prost. I don't see that Wake Forest has ever prevailed on the dispute resolution proceeding provision. Instead, it's just said that the university has discretion to implement, and as we've alleged, the license agreement is the implementation of the program as it relates to Dr. Van Dyke. Finally, with the Trade Secrets Protection Act claim, I direct the court to page 1139, paragraph 67. There we've identified seven discrete aspects of our trade secrets. Dr. Van Dyke only assigned inventions and discoveries to Wake Forest. He didn't assign processes, what have you, viewing those facts in the... I say them every time. May I break it? Oh, please. Viewing the facts in the light most favorable to Dr. Van Dyke, I think we've done enough to nudge this across the line from conceivable to plausible, and the court should view those facts in the light most favorable to Dr. Van Dyke and conclude that these inventions and discoveries, whatever that means, that's a question of fact for fact discovery. With that, we ask that the court reverse and remand. Thank you, Your Honor. We thank all parties and the cases submitted.